**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RENEE AVERS, | ) | CASE NO. 3:20-cv-01433 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Renee Avers (Plaintiff), challenges the final decision of Defendant Kilolo

Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying her application for

Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§

416(i), 423, *et seq*. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is

before the undersigned United States Magistrate Judge pursuant to the consent of the parties. (R.

16). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I. Procedural History**

On October 10, 2017, Plaintiff filed her application for DIB, alleging a disability onset date

of August 10, 2017. (R. 10, Transcript (Tr.) 168). The application was denied initially and upon

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a
party." Fed.R.Civ.P. 25(d).

(Tr. 98-127). Plaintiff participated in the hearing on March 13, 2019, was represented by counsel, and testified. (Tr. 28-65). On May 16, 2019, the ALJ found Plaintiff was not disabled. (Tr. 22). On April 28, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 12, 14 & 15).

Plaintiff asserts the following assignments of error: (1) the residual functional capacity (RFC) determination is not supported by substantial evidence because the ALJ failed to properly weigh the opinion of Dr. Lakin, a consultative examiner, and (2) the ALJ erred by failing to account for any mental limitations in the RFC determination. (R. 12, PageID# 426, 434).

## II. Evidence[2]

### A. Treatment Records

On May 9, 2017, Plaintiff saw neurologist Devon Conway, M.D. (Tr. 259-263). "Her clinical presentation [was] compatible with MS but [was] not highly suggestive of it." (Tr. 263). Her brain MRI was normal and her lumbar MRI revealed no significant canal stenosis. *Id*. Dr. Conway indicated that Plaintiff's "neurological evaluation is unremarkable." (Tr. 263). He recommended Plaintiff proceed with physical therapy as advised by Plaintiff's primary care physician. *Id*. Plaintiff's standard gait "was normal," as well as her heel, toe, and tandem walking. (Tr. 262). She could walk 25 feet in under 5 seconds without an assistive device. *Id*.

On November 13, 2017, Plaintiff was seen by Nurse Practitioner (NP) Kelly Buckles and

---

[2]  The recitation of the evidence is not intended to be exhaustive. It focuses on those portions of the record cited by the parties in their briefs *and* also deemed by the court to be critically related to the assignments of error raised.

stated she was having bilateral leg pain, weakness and cramping. (Tr. 274). Nurse Buckles found on examination that Plaintiff's back was normal; she had full range of motion (ROM) of the hip; she had no clubbing, cyanosis, or edema of the lower extremities; normal peripheral impulses; and that Plaintiff complained of numbness and tingling in the thighs bilaterally. (Tr. 275).

On January 10, 2018, Plaintiff was seen by Christopher Hassett, D.O., on referral from nurse Buckles. (Tr. 316). Plaintiff reported lower back pain and numbness starting two years earlier. *Id*. Plaintiff reported her pain was a two on a ten-point scale. *Id*. Her mental status examination was unremarkable, Plaintiff's motor examination revealed 5/5 strength and motor function within normal limits. (Tr. 318). Dr. Hassett observed that Plaintiff's symptoms were "consistent with neuropathy," but noted that results from objective tests "ha[d] been unremarkable." *Id*. He observed that an MRI of the thoracic spine from April of 2017 revealed degenerative changes. (Tr. 316).

On January 24, 2018, nurse Buckles noted Plaintiff's anxiety and depression follow-up was stable, physical examination was unremarkable including normal motor strength in the upper and lower extremities and no swelling. (Tr. 333-334). Nurse Buckles assessed only depression. (Tr. 334).

On September 21, 2018, nurse Buckles observed that Plaintiff had an abnormal gait due to numbness and tingling bilaterally, bilateral crepitus of the knees, decreased ROM in the hips, and used a cane. (Tr. 330). She assessed fibromyalgia affecting the lower leg, depression, bilateral tinnitus, vertigo, chronic fatigue, paresthesia of the skin, anxiety, restless legs, and muscle spasm of both lower legs. *Id*. Similar issues were noted during October 2018 and November 2019 visits. (Tr. 326-327; 321-323).

On December 2, 2018, Plaintiff completed a course of eleven physical therapy sessions that

had begun on October 2, 2018. (Tr. 344). The physical therapist noted Plaintiff had good to fair

compliance, and had an unchanged to improved discharge outcome with a "fair" prognosis. *Id.*

On January 7, 2019, an MRI of the lumbar spine revealed "[m]ultilevel disc degeneration

with facet arthropathy [but] no critical canal or neural foraminal narrowing." (Tr. 341).

**B. Medical Opinions Concerning Plaintiff's Functional Limitations**

On December 13, 2017, Plaintiff underwent a psychological consultative examination with

James B. Kelly, M.Ed. at the request of the State Agency. (Tr. 279-298). Plaintiff's chief

complaint was "anxiety, difficulty concentrating." (Tr. 280). Plaintiff reported never receiving

any mental health treatment, and her anxiety medications were prescribed by a nurse practitioner

from her primary care physician's practice. (Tr. 281). Plaintiff was described as "resistive"

during the session and "reluctant to participate in the interview/assessment." (Tr. 282). On

mental status examination, the provider noted: Plaintiff's flow of conversation and thought were

normal; no abnormality of affect or mood were observed; with respect to anxiety Plaintiff

reported worrying about finances and her medical condition, but she did not report a history of

anxiety or panic attacks; no abnormality of mental content was reported or observed; Plaintiff

was angry concerning her leg problems; sensorium and cognitive functioning were unremarkable

and there was "no substantial evidence of significant loss of mental ability." (Tr. 282-284).

Plaintiff was diagnosed with unspecified anxiety disorder in partial remission. (Tr. 286).

Assessed work-related limitations included Mr. Kelly's belief that irritability may be a limiting

factor in Plaintiff's ability to interact with supervisors, co-workers, and the public and to respond

appropriately to work pressures in a work setting. (Tr. 287).

On December 18, 2017, State Agency psychologist Denise Rabold, Ph.D., considered the

medical evidence of record and opined that Plaintiff had mild limitations in all four of the "B

4

criteria" of the listings. (Tr. 72).

On January 15, 2018, less than two weeks before nurse Buckle's unremarkable physical findings concerning Plaintiff and a lack of any physical diagnosis (Tr. 333-334), nurse Buckle indicated Plaintiff suffered from vertigo, neuropathy, and fibromyalgia. (Tr. 272). She opined Plaintiff was "unable to perform sustained work" due to becoming easily fatigued, leg weakness, and difficulty ambulating. (Tr. 273).

On January 22, 2018, Ryan Lakin, M.D., performed an "independent medical evaluation," concerning Plaintiff's alleged "weakness in legs" and "generalized fatigue." (Tr. 290). On examination, Plaintiff had a negative straight leg raise test, but decreased ROM in the lower extremities due to generalized pain with testing, no swelling, no muscle wasting, no point tenderness, and no anatomic deformity. (Tr. 291). Dr. Lakin concluded Plaintiff could lift/carry 5-10 pounds frequently and 10-20 pounds occasionally, could "sit continuously with regular breaks," "stand and walk occasionally with regular breaks," and that traveling long distances would be difficult. (Tr. 292).[3]

On February 1, 2018, State Agency physician Leanne Bertani, M.D., reviewed the evidence of record and completed a physical RFC assessment. (Tr. 74-76). Dr. Bertani opined Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk for six hours and sit for six hours each in an eight-hour workday. (Tr. 74-75). Dr. Bertani also found Plaintiff had

---

[3] Although the first page of Dr. Lakin's report bears the date of January 22, 2019, the year appears to be a typographical error. (Tr. 290, Exh. 4F). The associated Muscle Manual testing in the same exhibit bears the date of January 22, *2018*. (Tr. 296, Exh. 4F). Furthermore, the same exhibit bares an electronic signature of January 30, 2018. (Tr. 297, Exh. 4F). Finally, both State Agency physicians, Leanne Bertani, M.D. in February 2018 and Maureen Gallagher, D.O. in May 2018, reference Dr. Lakin's consultative examination, rendering a 2019 date impossible. (Tr. 77, 94).

no manipulative restrictions but could never climb ladders/ropes/scaffolds. (Tr. 75). She explained her postural limitations were supported by a "[n]ormal EMG and CK," a lumbar MRI showing scoliosis but no significant canal stenosis, and normal gait and strength per a neurologist's examination dated May 9, 2017. (Tr. 75). Finally, Dr. Bertani found Plaintiff's only environmental limitation was a need to avoid hazards due to vertigo. (Tr. 76). Dr. Bertani also references a consultative examiner report dated January 22, 2018, and notes the opinion relied too heavily on plaintiff's subjective report of symptoms and limitations. (Tr. 77).

On May 1, 2018, State Agency psychologist Juliette Savistcus, Ph.D. reviewed the evidence of record and also concluded that Plaintiff had only mild limitations with respect to the "B criteria" of the listings. (Tr. 89). Dr. Savitscus explained as follows:

> Clmt attended a psych CE and was dx'd with unspecified anxiety d/o in partial remission.
>
> Engages in cleaning, laundry, cooking, grocery shopping, yard work, and errands. Enjoys cross stitch.
>
> Performance on MSE suggests adequate cognitive functioning and ability to maintain concentration. Although related hesitatingly at CE, Per ADL form denies problems getting along with others. She reported no social problems at her recent long-term employment. She did not report a hx of inability to adjust to workplace demands.
>
> Evidence does not support a severe psychological impairment.

(Tr. 89).

On May 21, 2018, Plaintiff underwent another consultative examination performed by Dr. Lakin concerning her alleged back, leg, and foot pain, along with other conditions. (Tr. 306). Plaintiff reported difficulty with cooking, shopping, and cleaning, but could walk through a shopping mall "with frequent breaks and the use of a cane." *Id*. She reported being able to stand for 10-15 minutes before needing a break. *Id*. On physical examination, Plaintiff was 5'6" tall

and weighed 243 pounds, had no obvious psychiatric problems, positive straight leg raise test bilaterally, normal fine and gross manipulation, and no swelling. (Tr. 307-308). Neurologically, Plaintiff's reflexes were 2+/4, strength was 5/5 on both lower and upper extremities, sensory was grossly intact, she had "abnormal" and "slow guarded gait," and she could not perform reciprocating heel-to-toe tandem walking. (Tr. 308). Manual muscle testing and range of motion (ROM) was normal throughout. (Tr. 309-312). Dr. Lakin concluded Plaintiff could lift/carry 5-10 pounds frequently and 10-20 pounds occasionally, could "sit continuously with regular breaks," "stand and walk occasionally with regular breaks," and that traveling long distances would be difficult. (Tr. 308).

On May 30, 2018, State Agency physician Maureen Gallagher, D.O., reviewed the evidence of record and completed a physical RFC assessment. (Tr. 91-93). Dr. Gallagher opined Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, and stand/walk for six hours and sit for six hours each in an eight-hour workday. (Tr. 92). Dr. Gallagher also found Plaintiff had no manipulative restrictions but could never climb ladders/ropes/scaffolds. *Id.* She explained her postural limitations were supported by a "[n]ormal EMG and CK," a lumbar MRI showing scoliosis but no significant canal stenosis, and normal gait and strength per a neurologist's examination dated May 9, 2017. (Tr. 92). Finally, Dr. Gallagher found Plaintiff's only environmental limitation was a need to avoid hazards due to vertigo. (Tr. 93). Dr. Gallagher acknowledged Dr. Lakin's more restrictive report from January of 2018, but noted that Dr. Lakin's opinion relied "heavily on the subjective report of symptoms and limitations" provided by Plaintiff and that "the totality of the evidence does not support the opinion." (Tr. 94). Dr. Gallagher also appears to reference Dr. Lakin's second consultative exam when she observes that "clt gait is noted to be abnormal w/ a slow guarded gait," but notes the same exam shows 5/5

strength and normal range of motion. (Tr. 93).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6ᵗʰ Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6ᵗʰ Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's

impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since August 10, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease at L3-S1 and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations: occasional climbing of ramps and stairs; no climbing of ladders, ropes and scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; and avoid all exposure to hazards.

6. The claimant is capable of performing past relevant work as a customer service representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 10, 2017, through the date of this decision (20 CFR 404.1520(1)).

(Tr. 14, 16, 20, 22).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id*. However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignments of Error

#### 1. Weight Assigned to Consultative Examiner

In the first assignment of error, Plaintiff asserts that the RFC is not supported by substantial evidence because it is inconsistent with the limitations assessed by consultative examining physician Dr. Lakin. (R. 12, PageID# 426). A claimant's RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a). The ALJ bears the

responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c)*; see also Poe v. Comm'r of Soc. Sec.*, 342 F. App's 149, 157 (6ᵗʰ Cir. 2009) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician.")

To the extent Plaintiff is asking the court to reweigh the evidence *de novo* and arrive at its own RFC determination, such an invitation exceeds the scope of this court's review.[4]  The court can only review whether the ALJ's decision was supported by substantial evidence.

> [The plaintiff] additionally argues that the ALJ's RFC determination was not supported by substantial evidence. "[T]he threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). Substantial evidence in this context "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). This standard means that "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6ᵗʰ Cir. 2003). In reviewing the ALJ's decision, we 'may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6ᵗʰ Cir. 1984). Finally, [the plaintiff] bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6ᵗʰ Cir. 2008).

*O'Brien v. Comm'r of Soc. Sec.*, 819 Fed. App'x 409, 416 (6ᵗʰ Cir. 2020). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 Fed. App'x 663, 670 (6ᵗʰ Cir. 2009) (citations omitted).

---

[4]  Plaintiff's brief anticipated that the Commissioner may argue that Plaintiff is asking the court to reweigh the evidence and opinions of record. (R. 12, PageID# 430). Although Plaintiff disclaims any such request, Plaintiff's brief does just that by citing portions of the opinion that she believes supports or is consistent with Dr. Lakin's opinion (while overlooking any inconsistencies). Essentially, Plaintiff invites the court to reweigh this other evidence and find the ALJ's explanation deficient on that basis, rather than any actual deficiency in the explanation set forth in the ALJ's decision. (R. 12, PageID# 426-434).

The regulations now refer to the opinions of State Agency physicians as a "prior administrative medical finding," which is defined as "a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review … in your current claim based on their review of the evidence in your case record, such as: (i) [t]he existence and severity of your impairment(s); (ii) [t]he existence and severity of your symptoms; (iii) [s]tatements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; … (v) [i]f you are an adult, your residual functional capacity …." 20 C.F.R. §§ 404.1513(a)(5) & 416.913(a)(5).

The ALJ's determination that Plaintiff could perform a limited range of light exertional work is supported by the opinions of State Agency physicians Dr. Bertani and Dr. Gallagher (*i.e.* prior administrative medical findings). (Tr. 74-76, 91-93). Both assessed that Plaintiff could work at an exertional level of light or greater.[5] *Id*. The ALJ found Dr. Gallagher's opinion "persuasive." (Tr. 20).

There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating

---

[5] Dr. Bertani found Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently, as well as stand/walk for six hours in an eight-hour workday. (Tr. 74-76). These demands are consistent with the requirements of medium work. 20 C.F.R. § 404.1567(c). The regulations state that "[i]f someone can do medium work, we determine that he or she can also do sedentary and light work." *Id*. Thus, while the ALJ did not agree with Dr. Bertani that Plaintiff could perform medium exertional work (Tr. 19), Dr. Bertani's opinion, nonetheless, supports the ALJ's conclusion that Plaintiff could perform light exertional work.

psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work."). Thus, an RFC determination that is supported by the medical opinions of State Agency physicians is generally supported by substantial evidence.

Plaintiff's argument, though ostensibly challenging the RFC, actually revolves around her contention that the ALJ failed to "properly weigh" Dr. Lakin's consultative opinions. (R. 12, PageID# 426-427). At the outset, the court notes that Plaintiff's application for benefits was filed on October 10, 2017, several months *after* the Social Security Administration's new rules went into effect concerning the weighing of medical opinions and prior administrative medical findings.[6] *See* 20 C.F.R. § 404.1520c. The new regulations eliminated any hierarchical consideration of medical opinions, including the elimination of the treating physician rule. *See,*

---

[6] While the new regulations differentiate between "medical opinions" and "prior administrative medical findings," the regulations do not ascribe greater significance to either, and both and are evaluated utilizing the same factors. 20 C.F.R. § 404.1520c. "Prior administrative findings" refers to the findings of the State Agency physicians or psychologists. 20 C.F.R. § 404.1513(a)(1)(5).

*e.g.*, *Kinney v. Comm'r of Soc. Sec.*, No. 5:20-CV-1155, 2021 WL 3854828, at \*4 (N.D. Ohio Aug. 30, 2021) (concluding a report and recommendation "accurately reflected the fact that the hierarchical deference previously afforded the medical opinion of a treating physician had been eliminated") (Lioi, J); *Bovenzi v. Saul*, No. 1:20-cv-185, 2021 WL 1206466 at \*3 (N.D. Ohio Mar. 31, 2021) ("Under the new regulations applicable to claims filed on or after March 27, 2017, the opinions of [a treating medical source] are not entitled to any specific evidentiary weight.") (Pearson, J.).

Pursuant to the regulations in effect, 20 C.F.R. § 404.1520c(a), an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." Notably, even under the old regulations, the opinions of Dr. Lakin would not have constituted treating source opinions, as it is undisputed that he only performed two consultative examinations. Nevertheless, the court agrees that the ALJ must still "articulate in [the] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b). The ALJ addressed Dr. Lakin's opinions[7] as follows:

> Consultative examiner, Ryan Lakin, M.D., examined the claimant on behalf of the DDD [Division of Disability Determination] on May 21, 2018 (Exhibit 7F). During his physical examination of the claimant, Dr. Lakin noted blood pressure of 150/86, positive straight leg raise bilaterally with the lower extremities in the supine position from 30 degrees to 70 degrees, a slow guarded gait, inability to perform reciprocating heel to toe or tandem walking, and inability to stand on one leg (Exhibit 7F). Dr. Lakin diagnosed the claimant with chronic low back pain, bilateral lower extremity radiculopathy, bilateral foot pain, gait disturbance,

---

[7] The new regulations do *not* require discussing *each* opinion from the same source separately. *See* 20 C.F.R. § 404.1520c(b)(1) ("We are not required to articulate how we considered *each* medical opinion or prior administrative medical finding from one medical source individually.") (emphasis added).

memory loss, difficulty concentrating, history of vertigo and psychiatric illness (Exhibit 7F). Dr. Lakin opined the claimant could lift and carry 5-10 pound frequently for 2-6 hours and 10-20 pounds occasionally for 2 hours, continuously sit with regular breaks, stand and walk occasionally with regular breaks (Exhibit 7F).

Dr. Lakin examined the claimant again on January 22, 2019[8] (Exhibit 4F). Dr. Lakin's physical examination revealed decreased range of motion of the dorsolumbar spine, hips, knees and ankles, decreased range of motion of the lower extremities secondary to generalized pain, 4/5 strength in the lower extremities secondary to pain, blood pressure of 139/98, and difficulty performing reciprocating heel to toe and tandem walking (Exhibit 4F). Dr. Lakin diagnosed the claimant with lower extremity pain, cramping and generalized weakness, psychiatric illness, hypertension and hypothyroid (Exhibit 4F). In Dr. Lakin's opinion, the claimant could lift and carry 5-10 pound frequently for 2-6 hours and 10-20 pounds occasionally for 2 hours, continuously sit with regular breaks, stand and walk occasionally with regular breaks (Exhibit 4F). The undersigned does finds the opinion of Dr. Lakin partially persuasive to the extent it is consistent with light exertional work and the claimant's testimony and reports of daily activities. There is no basis in the record to limit her to occasional standing and walking, given her minimal back treatment and active lifestyle.

(Tr. 19).

The ALJ plainly rejected Dr. Lakin's opinion as it relates to Plaintiff's standing/walking limitations as unsupported by the record and inconsistent with her course of treatment and activities. Under the revised regulations, medical opinions, as well as prior administrative findings, are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; relationship with the claimant; length of treatment; frequency of examination; purpose and extent of treatment; examining relationship; specialization; and "other factors." *Id*. The regulations explain that "supportability" and "consistency" are the "most important factors," and that an ALJ may, but is not required to, discuss how he or she considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

---

[8] As discussed above in footnote three, this year appears to be a typographical error in the records, and the examination actually occurred in January of 2018.

When considering an opinion's supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Here, the ALJ is accurate in that Dr. Lakin's opinions do not offer any meaningful explanation as to why Plaintiff would be so limited with respect to standing/walking. (Tr. 292, 308). In addition, Plaintiff's brief cites Dr. Hassett's examination in her argument as evidence that Dr. Lakin's standing/walking restrictions were supportable (R. 12, PageID# 429), but neglects to point out that Dr. Hassett found Plaintiff's motor examination revealed 5/5 strength and motor function were within normal limits. (Tr. 318).

Regarding consistency, the regulations state "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ unambiguously questioned the consistency of Dr. Lakin's opinion with respect to Plaintiff's "active lifestyle." (Tr. 19). Earlier in the decision, with corresponding citations to the record, the ALJ noted Plaintiff's "pain complaints are minimal," and that Plaintiff performs many activities such as preparing meals, trimming bushes, performing household chores, grocery shopping, running errands, works on crafts, cares for pets, and visits with others. (Tr. 18). Finally, Dr. Gallagher, whose opinion the ALJ explicitly found "persuasive," noted inconsistencies between Dr. Lakin's conclusions and Dr. Lakin's own examinations, which found 5/5 strength and normal ROM in the lower extremities. (Tr. 20, 93)

The court concludes that the ALJ sufficiently articulated the weight ascribed to Dr. Lakin's

opinion(s). As alluded to above, Plaintiff essentially asks the court to override the ALJ's reliance on the State Agency medical opinions, who found Plaintiff was capable of light work. In place of the ALJ's determination, Plaintiff would have the court ascribe greater weight to Dr. Lakin's opinions and, on that basis, find the RFC was unsupported by substantial evidence. Such an argument is tantamount to an invitation for this court to reweigh the evidence, overrule the State Agency opinions based on this court's own interpretation of the medical evidence, and to find that the RFC for light exertional work—with additional limitations—is unsupported. This court's role in considering a social security disability appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017). Although the court does not foreclose the possibility that in some rare instances the facts of record may so blatantly contradict the RFC that a remand is warranted, the court does not find this is such a case.

### 2. Mental Limitations

In the second assignment of error, Plaintiff points out that the ALJ found she had "mild limitations" in all four areas of the "paragraph B" criteria. (R. 12, PageID# 434-435). Plaintiff proceeds to argue that because the ALJ did not include any mental limitations in the RFC determination, the ALJ's failure to do so is inherently erroneous. *Id*.

At Step Two of the sequential evaluation process, an ALJ must evaluate a claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If a claimant has a medically

17

determinable mental impairment, an ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas." 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). The four broad functional areas are also commonly referred to as the "paragraph B" criteria. *See, e.g.,* *Powell v. Comm'r of Soc. Sec.*, No. 5:15 CV 1775, 2016 U.S. Dist. LEXIS 131336, at *6 (N.D. Ohio Sep. 26, 2016) (Baughman, M.J.).

The Plaintiff is correct in her assertion that the ALJ found mild limitations in all four areas, and the decision explains as follows:

> Consultative examiner, James Kelly, M.Ed., examined the claimant at the request of the DDD on December 13, 2017 (Exhibit 3F). During his examination of the claimant, Dr. Kelly noted resistance and reluctant to participate (Exhibit 3F). Dr. Kelly diagnosed the claimant with an unspecified anxiety disorder in partial remission (Exhibit 3F). However, the claimant's medically determinable mental impairment of anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere (Exhibit 3F). In making this finding, the undersigned has considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four areas of mental functioning are known as the "paragraph B" criteria.
>
> As for the "paragraph B" criteria, the undersigned finds that the claimant has mild limitation understanding, remembering or applying information, mild limitation interacting with others, mild limitation concentrating, persisting or maintaining pace, and mild limitation adapting or managing oneself. These findings are supported by the opinion of the Division of Disability Determination (DDD) reviewers, Dr. Rabold and Dr. Savitscus, concluded the claimant did not have a severe mental impairment and found only mild limitations in each functional area (Exhibits lA and 3A). The undersigned finds the opinion of these reviewers persuasive as it is consistent with the claimant's lack of treatment. Further, these findings are supported by the claimant's admission that she performs self-care, prepares meals, trims bushes, performs household chores, goes grocery shopping, and runs errands (Exhibits 3F/7, 4F/l, SE/3, 4 and 6E/3). In addition, she watches television and movies, works on crafts, drives a car, cares for cats, manages money, and visits with others (Exhibits 3F/7, 4F/l, SE/4, 5 and 6E/2, 4). Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas, it is non-severe (20 CFR 404.1520a(d)(l)).

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 15).

Plaintiff, nevertheless, maintains that the ALJ, by finding she had mental limitations at Step Two, was required to account for these limitations when determining the Residual Functional Capacity (RFC).[9] (R. 12, PageID# 436). As this court understands Plaintiff's argument, because the ALJ had already determined Plaintiff had mild limitations in all four broad functional areas at Step Two, the ALJ erred as a matter of law by failing to include specific mental-based limitations in the RFC—even if her limitations were mild and resulted in a finding that her mental impairments were non-severe. Plaintiff's reliance on *Chapman v. Commissioner of Social Security* is misplaced. No. 2:14-CV-1828, 2016 WL 96174, at *4 (S.D. Ohio Jan. 8, 2016), *report and recommendation adopted*, 2016 WL 407296 (S.D. Ohio Feb. 3, 2016). Therein, the court took issue with the decision containing "no specific findings as to any of the functional areas." *Id*. It did not conclude, as Plaintiff appears to argue herein, that a finding of mild restrictions axiomatically warrants mental restrictions in the RFC.

In addition, Plaintiff's argument is inconsistent with the regulations. The regulations concerning the evaluation of mental impairments expressly state that "[i]f we rate the degrees of

---

[9] The RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. § 404.1545(a). The ALJ bears the responsibility for assessing a claimant's RFC, based on the relevant evidence. *See* 20 C.F.R. § 404.1546(c).

your limitation as 'none' or '**mild**,' **we will generally conclude that your impairment(s) is not severe**, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1) (emphasis added) (effective March 27, 2017). The same regulation states that "*[i]f* we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity." 20 C.F.R. § 404.1520a(d)(3) (emphasis added). The reasonable inference is that non-severe mental limitations do *not* impact the RFC.

It is true that where a claimant has more than one impairment, an ALJ should "consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' …." 20 C.F.R. § 404.1545(a)(2). Nevertheless, courts in this circuit have routinely rejected the same argument now advanced by Plaintiff. *See, e.g.*, *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-cv-818, 2017 WL 3587217 at *6 (S.D. Ohio Aug. 21, 2017) (agreeing with the Commissioner and finding that "[c]ontrary to Plaintiff's apparent contention, the ALJ's determination that she had some mild impairment does not require inclusion of mental limitations into the RFC.") (*citing Little v. Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253 at *14 (S.D. Ohio Aug. 24, 2015) ("In finding that Plaintiff's social functioning limitation are mild [sic], the ALJ determined that findings of more severe limitations in this domain by others … were not credible. Thus, the ALJ permissibly declined to include social functioning limitations in the RFC."); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862 at *4-5 (S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild enough not to warrant specific RFC limitations)); *accord McDowell v. Comm'r of Soc. Sec. Admin.*, No. 1:20-CV-00297-SL, 2021 WL 1911459, at *9 (N.D. Ohio Apr. 19, 2021) (Henderson, M.J.), *report and*

*recommendation adopted*, 2021 WL 1909789 (N.D. Ohio May 12, 2021) ("That the ALJ found Claimant had mild limitations in regards to the functional areas does not mandate inclusion of limitations in the RFC."); *Taylor v. Berryhill*, No. 17-11444, 2018 WL 3887521 at * (E.D. Mich. July 5, 2018) ("Indeed, courts in this district have found that mild limitations [in the paragraph B criteria] do not require incorporation into an RFC assessment.") (internal quotations omitted). In fact, the Sixth Circuit has held that sometimes even those impairments that are deemed "severe" at Step Two do not always have to be included in the RFC. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (rejecting "the proposition that all impairments deemed 'severe' in step two must be included in the hypothetical.").

Although it is possible that an ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment *may* constitute reversible error where the ALJ's RFC analysis is completely devoid of any discussion concerning a claimant's mental impairments, that is not what transpired herein. While the decision appears to discuss the Step Two and Step Four findings at the same time, that alone is not cause for remand. Moreover, the ALJ expressly relied on the State Agency psychologists' opinions who did not find Plaintiff's mental impairments to be severe. (Tr. 15). In addition, the ALJ discussed a number of Plaintiff's activities that he believed were illustrative of Plaintiff's lack of mental-based functional limitations that would impact Plaintiff's ability to work. *Id*.

Given the above quoted portions of the decision discussing the medical opinions and prior administrative medical findings, the court cannot conclude that the ALJ improperly ignored the effects of Plaintiff's mental impairments when arriving at an RFC determination rather than determining that no mental-based limitations were warranted. Therefore, the court finds the second assignment of error without merit.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

s/ *David A. Ruiz*

Date: September 21, 2021

David A. Ruiz
United States Magistrate Judge